**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------- X

**U.S. COMMODITY FUTURES**
**TRADING COMMISSION,**

|  |  |
|---|---|
| **Plaintiff,** | **11 Civ. 3543 (WHP)** |
| -against- | |
| **PARNON ENERGY INC., ARCADIA PETROLEUM LTD, ARCADIA ENERGY (SUISSE) SA, NICHOLAS J. WILDGOOSE AND JAMES T. DYER, Defendants.** | |

-----------------------------------------------------X

| **IN RE: CRUDE OIL COMMODITY FUTURES LITIGATION** | **Master File No. 11 Civ. 3600 (WHP)** |
|---|---|

**THIS DOCUMENT RELATES TO:**
**ALL MATTERS**
-----------------------------------------------------X

## OBJECTIONS BY NONPARTIES VITOL S.A., VITOL, INC. AND VITOL CAPITAL MANAGEMENT, LTD.

Pursuant to this Court's June 11, 2013 Order (docket entry 67), nonparties Vitol S.A. ("VSA"), Vitol, Inc. ("VIC") and Vitol Capital Management, Ltd. ("VCM") (collectively, the "Vitol Companies") hereby object to all document requests, served by any of the parties in the above captioned lawsuits, that require or are interpreted to require, any party to produce documents that any of the Vitol Companies produced to the Commodity Futures Trading Commission ("CFTC") between 2008 and 2010 in response to investigative subpoenas and other requests for documents and information from the CFTC.

## PRELIMINARY STATEMENT

VSA is a private company based in Geneva, Switzerland.  VSA, among other things, trades crude oil and oil products throughout the world for profit.  VIC is a private company that, among other things, trades physical crude oil and oil products for profit primarily in North America.  VCM is also a private company.  VCM, among other things, trades only crude oil derivatives and other derivatives. VIC and VCM are headquartered in Houston, Texas.  The Vitol Companies do not share their confidential commercial information (trading positions, profits and losses, internal market analysis) with anyone outside of each Vitol Company.

Between 2008 and 2010, at the CFTC's request pursuant to subpoenas, the Vitol Companies collectively produced more than 1.4 million pages of documents to the CFTC. Furthermore, before VSA could produce any documents to the CFTC, it was required by law to go through tremendous steps to assure that all of its productions complied with the extensive privacy provisions set forth in the applicable international and Swiss laws.  The Vitol Companies marked each document produced to the CFTC with a label stating that the document was "confidential."  Every cover letter that each Vitol Company sent to the CFTC enclosing the produced documents stated that the produced documents were confidential.  Each Vitol Company also sent letters to the CFTC's Freedom of Information Act ("FOIA") office stating that the produced documents should receive confidential treatment, and the letters asked the CFTC to provide each Vitol Company with an opportunity to object to any request that would cause the CFTC to believe that it was required to produce any of the Vitol documents.

When the Vitol Companies produced their respective confidential information to the CFTC, they did so with the belief that the confidential information would not be disseminated to third parties or to private litigants.  The Vitol Companies believed that, at the very least, the

21594256.2

CFTC would sufficiently warn the Vitol Companies and provide them with an opportunity to object to the CFTC disseminating their confidential documents to anyone. The CFTC, however, produced the confidential information to Defendants in April 2013 without providing any of the Vitol Companies with this opportunity. **The CFTC did not inform any of the Vitol Companies that they had produced the confidential information to the Defendants until June 13, 2013—two months after the CFTC produced the documents.** If the Vitol Companies had known that the CFTC had planned to produce their confidential information to Defendants before the documents were produced, the Vitol Companies would have aggressively objected and moved to prevent the CFTC's production.

When the CFTC informed the Vitol Companies that they had produced the confidential information to Defendants, the CFTC sent VIC a spreadsheet (called "Attachment A") listing the Bates numbers of documents that it produced to Defendants from each of the Vitol Companies. The Vitol Companies have not had sufficient time to re-review the 1.4 million documents that they produced before this Court's June 21, 2013 deadline to object, but the preliminary review of these documents is sufficient to allow the Vitol Companies to affirm that the documents are irrelevant to the underlying lawsuits, not reasonably calculated to lead to the discovery of admissible evidence and are comprised of sensitive, confidential business information. The Vitol Companies reserve the right to amend these objections and/or file a motion for a protective order as they continue to review their respective document productions to the CFTC and obtain a clearer understanding of these lawsuits.

21594256.2

## GENERAL OBJECTIONS

1.      The Vitol Companies object to every document request to providing any information that constitutes proprietary information, trade secrets or other confidential research, development or commercial information of the Vitol Companies.  Such information has been developed at a great expense and effort by the Vitol Companies, and disclosure would cause substantial economic harm to each Vitol Company's competitive position.  Further, such information is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

2.      The Vitol Companies object to every document request to providing any information subject to the attorney-client privilege, attorney work product doctrine and any other applicable privilege recognized under federal or international law.

3.      The Vitol Companies object to every document request as overly broad, unduly burdensome, unnecessary and harassing to the extent that much of the information requested has no relationship to the issues in this action.

4.      The Vitol Companies object to every document request to the extent they call for a legal conclusion or expert testimony.

5.      The Vitol Companies object to every document request to the extent that they are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

6.      The Vitol Companies object to every document request to the extent that they require the production of documents that contain private information about individuals.

7.      The Vitol Companies object to every document request to the extent that they require the production of documents in which it is factually impossible for the documents to exist.

Subject to these general objections, the Vitol Companies respond to the individual requests as follows:

## OBJECTIONS TO ALL DOCUMENT REQUESTS THAT WOULD REQUIRE THE PRODUCTION OF THE VITOL COMPANIES' DOCUMENTS

The Vitol Companies incorporate by reference the Preliminary Statement and General Objections stated above. The Vitol Companies further object to any requests that would require the production of documents that they produced to the CFTC in confidence between 2008 and 2010 on the grounds that the requests are overly broad and the production of documents would be unduly burdensome and oppressive for the Vitol Companies.

1.    **The Vitol Documents are Irrelevant and not Reasonably Calculated to Lead to the Discovery of Admissible Evidence.**

The Vitol Companies further object to any requests that would require the production of documents that they produced to the CFTC in confidence between 2008 and 2010 on the ground that said documents are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Documents are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence when the documents do not have any bearing on the claims and defenses of the subject lawsuit, which is the case here. *See* Fed. R. Civ. P. 26(b)(1), (c)(1)(A); *see also Micro Motion, Inc. v. Kane Steele Co.*, 894 F.2d 1318, 1322-23 (holding that the trial court erred by denying a nonparty's motion to quash a subpoena because party issuing the subpoena asked for irrelevant documents that were not reasonably calculated to lead to the discovery of admissible evidence rel); *see also Midland Investment Co. v. Van Alstyne Noel & Co.*, 59 F.R.D. 134, 139-140 (S.D.N.Y. 1973) (holding that document requests asking for any "all documents pertaining to any transaction in Spiral stock by any defendant" was overly broad and asked for irrelevant information in violation of Rule 26(b).)

5

The underlying lawsuits concern trades of West Texas Intermediate ("WTI") physical and futures contracts in a specific period of time in 2008.  The CFTC Complaint alleges that Defendants manipulated the New York Mercantile Exchange ("NYMEX") financial contract prices by (1) obtaining and holding physical crude oil to be delivered the next month at Cushing, Oklahoma, even though there was no need for the crude oil while (2) concurrently purchasing a long WTI derivatives position on the NYMEX and Intercontinental Exchange ("ICE") with the intent to artificially inflate the value of the position by driving up prices.  The CFTC Complaint also alleges that Defendants held the physical position to inflate the market as they sold their long derivatives position and sold short a second series of WTI derivatives before selling their physical position.  These alleged acts occurred between late 2007 and April 2008 by the Parnon defendants and exclusively involved one month calendar spreads in 2008 for WTI Derivatives and WTI Physicals for February/March, March/April, April/May, and May/June.  No other futures and no other physical commodities are involved.  The CFTC Complaint does not allege anything about the Vitol Companies, nor do the allegations in the Complaint evidence, refer or relate to the confidential information that the Vitol Companies provided to the CFTC pursuant to the CFTC's requests.

In May and June 2011, Plaintiffs filed separate class action lawsuits against Defendants.  One set of class Plaintiffs traded NYMEX WTI crude oil contracts while another set of class Plaintiffs traded WTI derivatives contracts.  The allegations that each class of Plaintiffs made against Defendants closely mirror the allegations that the CFTC made against Defendants.  Like the CFTC Complaint, Plaintiffs' Complaints do not allege anything about any of the Vitol Companies, nor do the allegations in the Complaints evidence, refer or relate to the confidential information that the Vitol Companies provided to the CFTC pursuant to the CFTC's requests.

6

The Vitol documents, which responded to the CFTC's subpoenas, included, among other documents, each Vitol Company's respective profit and loss statements (covering a time period of April 1, 2007 through March 21, 2008); their daily, weekly and monthly crude oil and other product positions (covering a time period of March 12, 2007 through March 21, 2008); futures trading and hedging positions in numerous markets over the same time; discussions amongst their traders with respect to what they had been seeing in the market (covering a time period of March 12, 2007 through August 17, 2007); and confidential information pertaining to the amounts paid to vendors and storage facilities (covering a time period of March 12, 2007 through August 17, 2007.)  Not only are the Vitol Companies' confidential business documents, in general, for a far more expansive time period than the time period set forth in the Complaints against Defendants, but also the Vitol Companies' documents reveal trading strategies and proprietary business analytics with respect to much more than WTI contracts.  The produced documents include information about the following:

- Flat Price NYMEX Natural Gas Call or Put Options

- 1 month NYMEX Natural Gas Spread Options

- 3 month NYMEX Natural Gas Spread Options

- Brent Crude Oil Futures traded on ICE

- Heating Oil Futures traded on the NYMEX

- Natural Gas Futures traded on the NYMEX

- Gasoline Futures traded on the NYMEX

- Pipeline trades

- Swaps

- Exchange Traded Options

21594256.2

- Fuel Oil

- Gasoline, Naphtha and Gasoline Belndstocks

- Jet Fuel

- Gasoil,  Heating Oil, and Diesel

- Liquefied Petroleum Gas  (Propane / Butane / Pentane)

- Communications between and/or among VIC traders or VCM traders with their management relating to the trading and/or storing and/or attempts to trade or store crude oil between March 12, 2007 and August 17, 2007.

- Communications between March 12, 2007 and August 17, 2007 between VIC traders or VCM traders with management and the following persons or entities relating to the storing and/or any attempts to store crude oil between March 12, 2007 and August 17, 2007:

  buyers and/or sellers of crude oil;

  buyers and/or sellers of crude oil derivatives;

  lessors or owners of land-based crude oil storage in the United States (including, but not limited to, storage facilities located in Cushing, Oklahoma, and the coast of the Gulf of Mexico);

  lessors or owners of water-based storage and/or transportation of crude oil (including supertankers) (including, but not limited to, lessors or owners of the M/V TI OCEANIA); and

  representatives of entities that engage in the production, selling, refining, buying, or transporting crude oil (including, but not limited to, BP, Chevron, Koch, Shell, Total, Valero Energy, Marathon Oil, Sunoco, Hess, ConocoPhillips, and/or Exxon Mobil).

- Documents related to a Vitol entity's lease of the vessel M/V TI OCEANIA between March 12, 2007 and August 11, 2007 for the storage of crude oil.

21594256.2

- Communications between and among VIC traders or management and any other Vitol entity created between March 12, 2007 and August 11, 2007 relating to the sale of or attempted sale of crude oil contained on the M/V TI OCEANIA.

- Documents showing that Barbara Lightbourn-West is, or was, the president of VCM between March 12, 2007 and August 11, 2007, and that she had supervisory authority over VCM traders.

- Communications by any Vitol entity related to any crude oil storage facility owned or leased by Enbridge Energy Partners, L.P. between March 12, 2007 and August 11, 2007.

- Communications related to any Vitol entity's use of floating storage (on supertankers) within or outside of U.S. territorial waters between March 12, 2007 and August 11, 2007.

- Communications related to VCM trader Dale Qualls' meeting with representatives of the Commodity Futures Trading Commission that took place at some time between January, 2007, and June, 2008.

- Communications related to the meeting of any personnel of any Vitol entity with the CFTC Division of Clearing and Intermediary Oversight ("DCIO") on April 29, 2008.

- Communications related to any Vitol entity's lease of the supertankers M/V PATRIS and M/V IRENA between March 12, 2007 and August 11, 2007.

- Communications from, or to, any Vitol entity related to the fiing of any Vitol entity's CFTC Forms 40 and Forms 102, including all draft and final Forms 40 and Forms 102 filed by Vitol, from 2000 to the present.

21594256.2

- Communications from, or to, any Vitol entity related to any requests for hedge exemptions for VIC or VCM.

- Documents related to the transfer of trader Andy Serotta's trading positions and employment from VIC to VCM in August 2007.

- Documents between VIC or VCM and any registered entity related to the size of that Vitol entity's oil positions between March 12, 2007 and August 11, 2007.

- Documents between VIC or VCM and any trading facility related to the size of that Vitol entity's oil positions between March 12, 2007 and August 11, 2007.

- Documents and communications related to VCM crude trader Andy Serotta's purchase of December 2007 - December 2008 and December 2008 - December 2009 one-year calendar spread options.

- Documents reflecting, referencing, or concerning daily trading positions, including volumes and end-of-day positions, in exchange-traded futures and options crude oil contracts (for proprietary as well as any client accounts), including any spreads, and including any such trading conducted on ICE or other electronic execution facility from April 1, 2007 to March 21, 2008.

- Documents reflecting, referencing, or concerning Vitol's daily trading positions, including volumes and end-of-day positions, in exchange-traded futures and options contracts in any petroleum product (*e.g.*, not crude oil) (for proprietary as well as any client accounts), including any spreads, and including any such trading conducted on ICE or other electronic execution facility, from April 1, 2007 to March 21, 2008.

21594256.2

- Documents reflecting, referencing, or concerning Vitol's daily trading positions, including volumes and end-of-day positions, in any financial or physical crude oil contract from April 1, 2007 to March 21, 2008.

- Documents related to crude oil trading strategies from April 1, 2007 to March 21, 2008.

- Documents (including guides, procedures, manuals, memoranda, meeting notes and communications) related to trading compliance and/or risk management policy procedures including, but not limited to, any policy or procedure relating to loss limits, position limits, or value-at-risk criteria from April 1, 2007 to March 21, 2008.

- Communications (including emails, instant messages and/or audio) between VCM trader Andrew Serotta and any other person or entity concerning the trading of crude oil futures or any other petroleum commodity future from April 1, 2007 to March 21, 2008.

- Weekly and/or monthly profit and/or loss summaries or reports relating to Vitol's trading in crude oil or any other petroleum product in the United States from April 1, 2007 to March 21, 2008.

- Documents related to VIC's internal investigation of a trading assistant who had allegedly surreptitiously used VIC's to trade crude oil, notwithstanding that the employee had no authority to engage in any trading.

None of the foregoing documents have any relationship with the claims and defenses of the subject lawsuits.

21594256.2

2.      **The Vitol Documents are Comprised of Confidential Commercial Information.**

The Vitol Companies further object to any requests that would require the production of documents that they produced to the CFTC in confidence between 2008 and 2010 on the ground that the documents are confidential commercial information that the Vitol Companies use to achieve commercial success that they do not share with anyone outside of the respective Vitol Company.  *Sommer v. Aronow*, No. 95 Civ. 9230, 1996 WL 399820 at *3 (S.D.N.Y. July 16, 1996); Fed. R. Civ. P. 26(c)(1)(A), 26(c)(1)(G).  A company's financial information, and other information that the company does not disseminate to persons outside of the company, is considered to be confidential commercial information.  *Id.*  "'Under Rule 26(c), the appropriateness of protective relief from discovery depends upon a balancing of the litigation needs of the discovering party and any countervailing protectible interests of the party from whom discovery is sought.'"  *See Mitchell v. Fishbein*, 227 F.R.D. 239, 245 (S.D.N.Y. 2005) (*quoting Apex Oil Co. v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y.1985)).  When balancing the litigation needs of the party seeking discovery against the party against whom the discovery is sought, courts analyze the standards set forth in Rule 26(b)(2)(C)(iii) of the Federal Rules of Civil Procedure.  *Mitchell*, 227 F.R.D. at 245.  Rule 26(b)(2)(C)(iii) states, in pertinent part, that the Court may limit discovery under the following circumstances:

> [when] the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

In *Mitchell*, 227 F.R.D. at 245, the Court stated that the term "burden" "may be construed to limit disclosure 'where the burden is not measured in the time or expense required to respond to requested discovery, but lies instead in the adverse consequences of the disclosure of sensitive,

albeit unprivileged, material.'" (*quoting Johnson v. Nyack Hosp.*, 169 F.R.D. 550, 561-62

(S.D.N.Y.1996)).  *Apex Oil v. DiMauro*, 110 F.R.D. 490, 496 (S.D.N.Y.1985) sets forth the

following framework for analyzing claims for protective relief under Rule 26(c):

> [W]here a party establishes that disclosure of requested
> information could cause injury to it or otherwise thwart
> desirable social policies, the discovering party will be
> required to demonstrate that its need for the information,
> and the harm that it would suffer from the denial of such
> information, outweigh the injury that disclosure would
> cause either the other party or the interests cited by it.

*Gelb v. American Tel. & Tel. Co.*, 813 F.Supp. 1022, 1034–35 (S.D.N.Y. 1993) is also

instructive.  In *Gelb*, the plaintiff sent document requests to the defendant asking for the

defendant's financial information.  *Id*.  The district court granted the defendants motion for a

protective order preventing the production of the documents because the documents comprised

confidential commercial information.  *Id*.  The Court stated:

> [The requested documents] are not central to plaintiff's
> claims, but rather they center on internal financial
> operations. While they provide information relevant to this
> lawsuit (the volume of AT & T revenue attributable to
> calling cards), the information is also potentially valuable
> commercial information which, wholly independent of the
> unlawful conduct alleged by this lawsuit, could alter
> defendant AT & T's competitive position in the
> telecommunications market.

All of the information that the Vitol Companies produced to the CFTC is confidential

commercial information that the Vitol Companies, all of which are private companies, do not

share with anyone outside of each company.  The Vitol Companies expend a tremendous amount

of time and effort to make sure that the information is not known by, or ascertainable to, anyone

outside of that particular Company.  In order to input, or have access to, the information, a

person must have a user name and password that will allow the person to log on to a Vitol

Company's networks.  Moreover, people are restricted to what information they can access.  For example, VCM traders do not have access to VSA or VIC's profit and loss information, position information, views of the market, and storage information.  Similarly, VIC and VSA traders do not have access to VCM's profit and loss information, position information, or views of the market.  Because VCM traders do not trade physical products, VCM does not maintain storage information.  Simply put, the Vitol Companies do not have access to each other's confidential business information.  The Vitol Companies employ information technology professionals who make sure that breaches in the computer systems do not occur.  Each Company also makes sure each of their employees know and understand that, as private companies, information concerning its profit and losses, trading positions, the traders' unique views of the market strategies and storage information must not be shared outside of that company.  If persons outside of the Vitol Companies have access to the confidential business information, the Vitol Companies' competitive advantages will be undermined if not eviscerated.

Each Vitol Company made it clear to the CFTC that the information that they had provided was confidential business information.  Each Vitol Company labeled every produced document (over 1.4 million documents) as "confidential" and requested, in writing, that the CFTC afford confidential treatment of the documents by, among other things, allowing the Vitol Companies to object to any request from third parties asking for the documents as permitted by the FOIA.

The confidential information is not any less valuable or confidential simply because the CFTC has already produced the documents.  Counsel for the Defendants told counsel for the Vitol Companies that, as of June 17, 2013, Defendant had not reviewed the Confidential Information.  Furthermore, the existing April 30, 2012 Protective Order is not a remedy

sufficient to alleviate the Vitol Companies' concerns because dissemination of the irrelevant

confidential information to anyone in the underlying lawsuits allowed to review the documents

will undermine the Vitol Companies' competitive position in the crude oil trading market.

*Mitchell*, 227 F.R.D. at 245 (stating that a protective order limiting (1) the persons who could

view a company's documents to attorneys and others involved in the lawsuit and (2) the use of

the company's confidential documents to issues in the lawsuit was not a sufficient means to

protect the confidentiality of the documents because the harm would occur upon the

dissemination of the requested information to the other party.)  Although the confidential

information that the CFTC produced to Defendants is several years old, the fundamental

principles and strategies that the Vitol Companies utilized several years can shed light to

competitors on the principals and strategies that the Vitol Companies still use today.

June 21, 2013
New York, New York

/s/  David P. Langlois
David P. Langlois
SUTHERLAND ASBILL & BRENNAN LLP
Grace Building
1114 Avenue of the Americas
40th Floor
New York, NY 10036
(t):  212.389.5007
(f):  212.389.5099
david.langlois@sutherland.com

/s/  Keith J. Barnett
Keith J. Barnett (Pro Hac Vice Application To
Be Filed)
SUTHERLAND ASBILL & BRENNAN LLP
Georgia Bar No.  142340
999 Peachtree Street, NE
Suite 2300
Atlanta, GA  30309
(t):  404.853.8000
(f):  404.853.8806
keith.barnett@sutherland.com

*Attorneys for Vitol, Inc., Vitol Capital Management, Ltd., and Vitol S.A.*