**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                            :
U.S. COMMODITY FUTURES
TRADING COMMISSION,                         :

                Plaintiff,               :       11 Civ. 3543 (WHP)

          -against-                          :       ECF case

PARNON ENERGY INC., ARCADIA                 :
PETROLEUM LTD., ARCADIA
ENERGY (SUISSE) SA, NICHOLAS J.             :
WILDGOOSE AND JAMES T. DYER,
                                            :
              Defendants.
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X


**PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE**
**ORDER AND FOR ENFORCEMENT OF THE STIPULATED PROTECTIVE ORDER**

# TABLE OF CONTENTS

I.   Factual and Procedural Background ................................................................ 2

II.  Argument ......................................................................................................... 5

   A.   For Good Cause, the Court May Prevent Enforcement or Require Withdrawal of Defendants' Subpoenas ........................................................................... 5

   B.   Defendants' Subpoenas Implicate Privileged Information ............................... 8

      1.   The Privilege Broadly Protects the Anonymity of Informants ...................... 8

      2.   The Public Policy Undergirding the Privilege Supports Its Application in This Case ..................................................................................... 11

      3.   The Informant's Privilege Has Not Been Waived ...................................... 12

      4.   The Information Sought in the Subpoenas is Not Material to Defendants' Defense Because It Is Not Relevant to Any Claim or Defense in This Case ........................... 13

   C.   Defendants Violated the Stipulated Protective Order ................................... 15

III. Conclusion .................................................................................................... 17

## **TABLE OF AUTHORITIES**

**Cases**

*AVCO Financial Corp. v. CFTC*, 929 F. Supp. 714, 719 (S.D.N.Y. 1996)................................. 15

*CFTC v. Harker*, 615 F. Supp. 420, 424 (D.D.C. 1985).............................................. 15

*Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK, 2012 WL 6634680, at *2 (S.D.N.Y. Dec. 19, 2012) ........................................................................................... 5, 6, 7

*Devlin v. Transp. Commc'ns Int'l Union*, No. 95CIV.0742(JFK) (JCF), 2000 WL 249286, at *2 (S.D.N.Y. Mar. 6, 2000) ........................................................................... 6

*DiBlasio v. Keane*, 932 F.2d 1038, 1041-42 (2d Cir. 1991) ........................................ 13

Durand v. Wal-Mart Assocs., Inc., No. 2:09CV71KS-MTP, 2009 WL 2181258, at *1 (S.D. Miss. July 22, 2009) ..................................................................................... 6

*Fairchild v. Wright*, No. CV-99-338-S-BLW, 2006 WL 2519481, at *1-7 (D. Idaho Aug. 30, 2006) ........................................................................................... 9, 10, 14

*In re Apollo Group, Inc. Sec. Litig.*, 251 F.R.D. 12, 34-35 (D.D.C. 2008) .................................. 8

*In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 221-22 (S.D.N.Y. 2006) ........... 7

*In re United States*, 565 F.2d 19, 22-23 (2d Cir. 1977) ............................................ 8, 11

*Penthouse Int'l Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981) .......................... 5

*Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96Civ.7590 (DAB) (JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997) .............................................................. 12

*R.C.O. Reforesting v. United States*, 42 Fed. Cl. 405, 410 (Fed. Cl. 1998)................................. 14

*Rajala v. McGuire Woods, LLP*, No. 08–2638–CM–DJW, 2010 WL 4683979, at *5 (D. Kan. Nov. 12, 2010) ..................................................................................... 7

*Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ........................................ 16

*Roviaro v. United States*, 353 U.S. 57, 59-62 (1957) ......................................... 3, 8, 11, 12, 13

*SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999).................................................. 13

*Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) .. 7

*Straily v. UBS Fin. Servs., Inc.*, No. 07-cv00884, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008) ........................................................................................... 7

*United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990)............................................. 14

*United States v. Herrero*, 893 F.2d 1512, 1526-27 (7th Cir. 1990)................................................. 14

*United States v. Napier*, 436 F.3d 1133, 1133-36 (9th Cir. 2006)............................................ 9, 14

*United States v. Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) ........................................................ 13

*Vilma v. Goodell*, Nos. 12-1283, 12-1718, 12-1744, 12-1283, 2012 WL 4926993, at *3) (E.D. La. Oct. 16, 2012) ....................................................................................................................... 6

*Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 768 (D.C. Cir. 1965)........... 8

**Statutes**
7 U.S.C. § 23(d) (2012) ............................................................................................................. 12

**Rules**
Fed. R. Civ. P. 26 .................................................................................................................. 6, 16

Fed. R. Civ. P. 26(b)(1)............................................................................................................. 15

Fed. R. Civ. P. 26(b)(5)(B) .................................................................................................... 2, 15

Fed. R. Civ. P. 26(c) ...................................................................................................... 1, 2, 5, 6, 7

Fed. R. Civ. P. 34 .................................................................................................................. 2, 16

Fed. R. Civ. P. 37 ...................................................................................................................... 16

Fed. R. Civ. P. 45 ....................................................................................................................... 6

Plaintiff United States Commodity Futures Trading Commission ("CFTC") seeks a protective order, under Federal Rule of Civil Procedure ("Rule") 26(c), preventing enforcement, or requiring withdrawal, of two subpoenas *duces tecum* issued to a non-party attorney and his law firm, from the Northern District of Illinois, by Defendants Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose, and James T. Dyer (collectively, "Defendants").  The CFTC also requests that the Court impose a remedy for Defendants' violation of the Stipulated Protective Order.

The Court's power and responsibility to control discovery in this case authorizes the Court to enter a protective order governing Defendants' enforcement of subpoenas issued from another district, and good cause exists for the issuance of the protective order the CFTC seeks:

- Defendants' subpoenas implicate privileged information because, in this case, the informant's privilege reasonably applies both to the identity of the confidential source and to the identity of the confidential source's attorney and the attorney's law firm.  Inadvertent production of privileged information does not waive the privilege, and the documents sought in the subpoenas are not necessary to Defendants' defense of the CFTC's claims.

- Even if the informant's privilege did not apply to the identity of the source's attorney and the attorney's law firm, Defendants' subpoenas request information wholly irrelevant to the claims or defenses in this case.

- Defendants violated the Stipulated Protective Order operative in this case when they failed to notify the CFTC of its inadvertent production of information subject to a claim of privilege, and Defendants harnessed the CFTC's inadvertently produced information to generate the subpoenas at issue in this dispute.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The CFTC initiated this action on May 24, 2011.  On June 25, 2012, the Court entered a

Stipulated Protective Order (Dkt. No. 59), agreed upon by the parties, that governs the parties'

handling of confidential information exchanged in discovery.  The Stipulated Protective Order

contains two provisions pertinent to this dispute.  First, Part G.2 of the Protective Order applies

to inadvertent or unintentional disclosure of privileged information.  Stip. Prot. Ord. at 12.  Part

G.2 states that privileged information "shall be immediately returned if the [information] appears

on its face to have been inadvertently produced or if there is notice of the inadvertent

production" and shall be handled in accordance with Rule 26(b)(5)(B).  *Id.*  Second, Part G.2

further states that "[s]uch inadvertent or mistaken disclosure . . . shall not by itself constitute a

waiver by the producing party of any claims of privilege or work-product immunity."  *Id.*

On July 23, 2012, pursuant to Rules 26 and 34, Defendants served on the CFTC requests

for production of documents.  *See* Exh.1, Defs.' 1st Req. for Prod. (July 23, 2012).  Defendants'

requests included demands that the CFTC produce documents related to other market

participants, including, for example, other market participants' position data.[1]  *See id.* at 5.  The

CFTC served Defendants with its responses and objections on August 29, 2012, and, pursuant to

the parties' agreement, began producing documents responsive to Defendants' requests on

September 17, 2012.  To date, the CFTC has produced approximately 5.7 million documents

(more than 16 gigabytes of data) and almost 200,000 audio files.

---

[1] Beginning in approximately December 2007, and pursuant to its authority as a financial
regulator, the CFTC conducted a broad inquiry into the crude oil markets in the United States,
termed the "National Crude Oil Investigation."  During that investigation, the CFTC sent
administrative subpoenas *duces tecum* to numerous market participants and received millions of
documents and other pieces of information in response.  In this case, the CFTC has produced
approximately 3.9 million responsive documents from the National Crude Oil Investigation.

On March 22, 2013, in response to Defendants' document requests, the CFTC produced approximately 252,782 documents and 15.3 gigabytes of transactional and price data to Defendants.  Exh. 2, S. Siddiqui Ltr. to E. Bradshaw (Mar. 22, 2013).  The March 22 production was comprised, in part, of documents collected during the CFTC's National Crude Oil Investigation.  Although the CFTC did not create these documents, it was the party "producing or supplying" them in this litigation and was therefore the "Producing Party" of the documents, as that term is used in the Stipulated Protective Order.  *See* Stip. Prot. Ord. at 2.

On April 25, 2013, the CFTC produced 2,994 documents to Defendants, including images, extracted text, and metadata files.  *See* Exh. 3, S. Siddiqui Ltr. to E. Bradshaw (Apr. 25, 2013).  The April 25 production included 190 documents redacted pursuant to the informant's privilege.  *See generally Roviaro v. United States*, 353 U.S. 53, 59-62 (1957).  To protect the identity of its anonymous sources, the CFTC redacted information tending to reveal the identity of an attorney and a law firm representing certain of the anonymous sources.  The CFTC's redaction log for its April 25 production identified each of these redactions and the claim of privilege for each.  *See* Exh. 4, CFTC Redaction Log (Apr. 25, 2013).

On June 10, 2013, Defendants issued two subpoenas *duces tecum*, under the authority of the United States District Court for the Northern District of Illinois, to the anonymous source's attorney and the attorney's law firm.  *See* Exh. 5, Subpoenas to Attorney and Law Firm (June 10, 2013).[2]  The documents requested in the subpoenas include those related to the CFTC's communications with the anonymous source's attorney, direct or indirect communications between the anonymous source's attorney and any other person concerning the Defendants, as well as notes, memos or any other record the anonymous source's attorney possesses concerning

---

[2] With the Court's permission, the CFTC submitted the subpoenas to the Court on August 6, 2013 for filing under seal.

Defendants. *See id.* The document requests attached to the subpoenas derive, in substantial part, from the information the CFTC intended to redact, but inadvertently included, in its April 25 production.

On June 12, 2013, Defendants wrote to the CFTC regarding the April 25 production. Defendants asserted that the CFTC's provision of information to the CFTC's anonymous source violated "a number of applicable statutes and regulations."[3]  Exh. 6, E. Bradshaw Ltr. to C. Ryall (June 12, 2013), at 1.  Defendants requested information related to the privileged information described in the CFTC's redaction log, including the identity of the anonymous source, the anonymous source's employer, the anonymous source's attorney, and the identities of CFTC staff that may know the identity of the anonymous source.  *See id.* at 2-3.

On June 14, 2013, Defendants notified the CFTC of their June 10, 2013 subpoenas. Upon learning of the subpoenas, the CFTC determined that its April 25 production included inadvertently included privileged metadata associated with approximately 21 documents the CFTC redacted pursuant to the informant's privilege.[4]  On June 19, 2013, pursuant to the Stipulated Protective Order, the CFTC notified Defendants of the inadvertent production and requested the immediate return of such discovery materials.  Exh. 9, C. Ryall Ltr. to E. Bradshaw (June 19, 2013), at 1.  The CFTC also requested disclosures regarding Defendants' apparent

---

[3] Defendants did not identify the "statutes and regulations" they believed had been violated in their June 12 letter, and as set forth in more detail below, Defendants' assertion was mistaken.

[4] As discussed during the Court's August 2, 2013 hearing on this issue, the CFTC's April 25 production included both document images and metadata files.  *See* Exh. 7, Tr. of Hearing (Aug. 2, 2013), at 5:4-11.  The metadata files included e-mail address information and other similar types of data.  The CFTC redacted each of the document images in accordance with its privilege claims, but inadvertently included some of the information behind the image redactions in the metadata files it produced.  *See id.*  Images of the documents containing inadvertently produced privileged information are being filed under seal as Exhibit 8.

failure to notify the CFTC of the receipt of facially privileged information, as required by the Stipulated Protective Order, and requested withdrawal of Defendants' subpoenas.  *Id.* at 1-2.

The parties conferred by telephone on June 21, 2013.  During this conference, Defendants stated that they had learned the identity of the anonymous source's attorney, not from the CFTC's April 25 production, but from a document the CFTC collected during its National Crude Oil Investigation and produced by the CFTC to Defendants in this case on March 22, 2013.  *See* Exh. 10, Doc. from Mar. 22, 2013 CFTC production (filed under seal).[5]  The CFTC invoked the Stipulated Protective Order and requested the return of this additional document on June 25, 2013.  Exh. 11, C. Ryall e-mail to E. Bradshaw (June 25, 2013).  Defendants have certified that they have segregated from their discovery database the documents identified by the CFTC on June 19 and June 25 pending resolution of the dispute now before the Court.  Exh. 7 at 13:2-13. On June 28, 2013, the parties wrote jointly to request the Court's intervention in the dispute.

## II.   ARGUMENT

### A.   For Good Cause, the Court May Prevent Enforcement or Require Withdrawal of Defendants' Subpoenas

Rule 26(c) confers on the Court broad discretion to limit disclosure of information subject to claims of privilege.  *See Penthouse Int'l Ltd. v. Playboy Enters., Inc.*, 663 F.2d 371, 391 (2d Cir. 1981).  The Court also has the inherent "right and responsibility to control the broad outline of discovery."  *Chevron Corp. v. Donziger*, No. 11 Civ. 0691 LAK, 2012 WL 6634680, at *2 (S.D.N.Y. Dec. 19, 2012) (citation and internal quotation marks omitted).  This control may

---

[5] At the Court's August 2, 2013 hearing, Defendants' counsel described Defendants' discovery of the attorney's name:

> A nonparty document was discovered that has the same text that we had seen in the redacted documents, but the attorney's name wasn't redacted.  So it was obvious from the face of that document, based on our prior examination of the documents related to the information that had been redacted, that here this attorney's name had not been redacted by the nonparty, and that's how we discovered it.

Exh. 7 at 12:20-13:1.

extend to subpoenas issued from other districts.  *Id.*; *see also, e.g.*, *Devlin v. Transp. Commc'ns Int'l Union*, No. 95CIV.0742(JFK) (JCF), 2000 WL 249286, at *2 (S.D.N.Y. Mar. 6, 2000) (granting protective order where out-of-district subpoenas exceeded scope of authorized discovery); *Durand v. Wal-Mart Assocs., Inc.*, No. 2:09CV71KS-MTP, 2009 WL 2181258, at *1 (S.D. Miss. July 22, 2009) ("[A] motion for a protective order [regarding a subpoena issued in another district] does not seek to vindicate a non-party's right to resist the compulsory process of the court. Instead, the motion seeks to place reasonable limits on the discovery process.") (citations omitted).  Here, the CFTC seeks entry of a protective order, rather than an order quashing the subpoenas, and the Court has authority to issue such an order.

In *Donziger*, the court addressed the relationship between Rule 45, which vests the issuing court with the power to quash or modify a subpoena, and Rule 26, which confers authority upon the court in which the action is pending to control the scope of discovery.  *See id.* at *2-3.  The court held that, although motions to quash must be initiated in the forum from which a subpoena is issued, "[a] party's discovery rights [in other districts] can rise no higher than their level in the district of trial . . . Consequently, a party may seek a Rule 26(c) protective order to preclude another party from obtaining discovery from a non-party via subpoena issued by another court."  *Id.* at *2 (quoting *Vilma v. Goodell*, Nos. 12-1283, 12-1718, 12-1744, 12-1283, 2012 WL 4926993, at *3 (E.D. La. Oct. 16, 2012) (internal quotation marks and additional citation omitted)).

The *Donziger* court therefore held that "the district court in which the action is pending may issue protective orders ruling that discovery not be had or that it be conducted on limited terms, as these are issues that extend beyond the details of a specific subpoena."  *Id.* (citing *Rajala v. McGuire Woods, LLP*, No. 08–2638–CM–DJW, 2010 WL 4683979, at *5 (D. Kan.

6

Nov. 12, 2010)).  Adopting the standard set forth in *Rajala*, the *Donziger* court held that the court may enter a protective order concerning a subpoena issued from another district when "'(1) the issues raised are central to the case and extend beyond the specifics of the particular subpoena, and (2) the requested ruling is necessary to insure that general discovery issues will receive uniform treatment, regardless of the district in which the discovery is pursued.'"  *Id.* (quoting *Rajala*, 2010 WL 4683979, at *7).[6]  The CFTC must also meet the movant's traditional burden of establishing good cause, under Rule 26(c), for entry of a protective order.  *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 454 F. Supp. 2d 220, 221-22 (S.D.N.Y. 2006).

The CFTC's motion for a protective order meets both parts of this standard.  The primary issue raised – whether the informant's privilege applies to the identity of a source's attorney – is central to the case and goes beyond these particular subpoenas.  First, the CFTC had more than one confidential source come forward during the investigation of this matter; the Court's ruling on this dispute could therefore impact the confidentiality of other informant-related information in the case.  Second, as discussed in more detail below, the Court's ruling on the application of the informant's privilege here could have a wide-ranging impact on investigations by civil law enforcement agencies like the CFTC, which often rely on the cooperation of market participants to detect potential violations of the law.  Moreover, good cause exists for issuance of a protective order because Defendants' subpoenas implicate information protected by the informant's

---

[6] Although the *Rajala* court determined that the movant had not met its burden for the entry of a protective order limiting enforcement of a subpoena issued from another district, it conducted a broad inquiry of case law and concluded that the "majority view" is that courts may enter such orders to maintain control over discovery.  *See Rajala*, 2010 WL 4683979, at *4-5 (collecting cases and discussing *Straily v. UBS Fin. Servs., Inc.*, No. 07-cv00884, 2008 WL 5378148, at *2 (D. Colo. Dec. 23, 2008) ("It is beyond cavil, however, that the broad outlines of discovery in a civil case are controlled by the court where the case is filed.") and *Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001) ("[T]he district court in which an action is pending has the right and responsibility to control the broad outline of discovery.")).

privilege, because the information Defendants seek is not relevant to any claim or defense in this matter, and due to Defendants' failure to notify the CFTC violated the Stipulated Protective Order already in force in this case.

**B.      Defendants' Subpoenas Implicate Privileged Information**

The informant's privilege protects from disclosure "the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States*, 353 U.S. 57, 60 (1957) (citations omitted).  Where disclosure of the contents of a communication will tend to reveal the identity of an informant, the contents are privileged. *Id.*

The informant's privilege belongs to the government, and its underlying purpose is the "furtherance and protection of the public interest in effective law enforcement." *Id.* at 59; *see also Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 768 (D.C. Cir. 1965) (privilege is designed "to protect the flow of information to the Government").  The party seeking the identity of an informant bears the burden of establishing the need for disclosure. *In re United States*, 565 F.2d 19, 23 (2d Cir. 1977) ("Disclosure should not be directed simply to permit a fishing expedition, or to gratify the moving party's curiosity or vengeance, but only after the trial court has made a determination that [movant's] need for the information outweighs the [government's] claim of privilege.") (citations omitted).

**1.      The Privilege Broadly Protects the Anonymity of Informants**

Courts have recognized that circumstantial information may tend to reveal the privileged identity of an informant. *See In re Apollo Group, Inc. Sec. Litig.*, 251 F.R.D. 12, 34-35 (D.D.C. 2008) (approving government's redaction of witness interview locations and of names of persons quoted by witnesses).  Beyond just protecting informants' names, the privilege has been held to "'extend[] to information that would tend to reveal the identity of the informant,' because the underlying purpose of the privilege is 'to protect the anonymity of the confidential source' in

order to encourage cooperation with law enforcement officials."  *Id.* at 34 (quoting *United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir. 2006)).

Two cases from the criminal context illustrate the importance of circumstantial information that tends to reveal an informant's identity.  In *Napier*, the Ninth Circuit analyzed the informant's privilege in the context of a defendant's motion to unseal a partially redacted attachment to an affidavit submitted in support of an application for a search warrant; the attachment described two police-supervised drug purchases from Napier executed by a confidential informant.  *Napier*, 436 F.3d at 1134-35.  Ultimately, however, Napier was not charged with the two sales to the confidential informant.  *Id.* at 1135.  Although the affidavit attachment did not name the confidential informant directly, the government opposed Napier's motion to unseal on the ground that revealing the details of the two transactions would reveal the identity of the confidential informant.  *Id.* at 1134-35.

Napier argued that the informant's privilege, as articulated in *Roviaro*, did not apply to his motion because he was not seeking the name of the informant.  *Id.* at 1136.  The Ninth Circuit disagreed, holding that the informant's privilege protects more than just the informant's name; rather, the privilege protects the "anonymity" of the informant.  *Id.*  Accordingly, the details of the transactions, which the *Napier* court held "would tend to reveal the informant's identity, [were] protected to the same extent as the confidential informant's name."  *Id.*

In *Fairchild v. Wright*, a confidential informant, working under the supervision of the police, purchased drugs from Fairchild; that transaction and information from another confidential informant formed the basis of an application for a search warrant, and Fairchild was convicted in state court of possession of the drugs seized during the resulting search.  No. CV-99-338-S-BLW, 2006 WL 2519481, at *1 (D. Idaho Aug. 30, 2006).  Neither informant testified

9

at trial.  *Id.* at *5.  Following his conviction, Fairchild filed a federal *habeas* action alleging that his rights were violated by the state court's refusal to require the state to reveal the names of the confidential informants and the identities of the police officers involved in the controlled transaction.  *See id.* at *4-7.

The district court rejected Fairchild's claims.  Relying in part on the Ninth Circuit's decision in *Napier*, the *Fairchild* court held that Fairchild had failed to establish that knowing the identities of the non-testifying confidential informants was necessary to his defense:  Fairchild was charged only with drug possession, not with any transactions he executed with the confidential informants.  Moreover, the confidential informants' "roles were limited to assisting law enforcement officers in developing probable cause for the search warrant."  *Id.* at *5.  With respect to the police officers involved in the controlled transactions, the court found that their identities were protected because the state had indicated that "providing the identity of at least one of the officers would 'pinpoint the identity of the confidential informant.'"  *Id.* at *6.  Moreover, the court held, the police officers' identities were irrelevant:  the events leading up to the controlled transaction the officers directed were not relevant to the drug possession charge of which Fairchild was ultimately convicted.  *Id.* at *7.

In this case, the CFTC seeks to protect information that would tend to reveal the identity of its confidential source.  Founded upon information from the CFTC's inadvertent production, Defendants' subpoenas to the source's attorney and his law firm request documents related to the source's and the attorney's communications with each other and with the CFTC.  *See* Exh. 5.  Disclosure or confirmation of the anonymous source's attorney's identity will tend to reveal the identity of the attorney's client, a confidential source.  The physical crude oil trading community

in the United States is relatively small, and the attorney's identity – similar to the identities of the police officers in *Fairchild* – could be used to deduce the source's identity.[7]

### 2. The Public Policy Undergirding the Privilege Supports Its Application in This Case

The CFTC's invocation of the informant's privilege in this case falls squarely within the ambit of the public policy underlying the privilege. *See In re United States*, 565 F.2d at 22 (noting privilege's "ancient" origins and discussing value of informants' anonymity as a means to protect informants from reprisal and to encourage others "to cooperate in the administration of justice") (citation and internal quotation marks omitted); *see also Roviaro*, 353 U.S. at 59 (privilege recognizes citizens' obligation to assist law enforcement "and, by preserving their anonymity, encourages them to perform that obligation"). If the privilege is to achieve its goals of protecting anonymity and encouraging cooperation with law enforcement, it must apply to the identity of the source's attorney in this case.

The CFTC's enforcement actions regularly begin, as this case did, with anonymous informants, many of whom hire attorneys, as the CFTC's confidential sources in this case did, to represent them and to further protect their identities from disclosure. The informant's privilege exists to encourage just this kind of activity. *See In re United States*, 565 F.2d at 22. Indeed, Congress implicitly recognized this relationship and the public benefit generated by anonymous sources when it enacted the "whistleblower" provisions of the Commodity Exchange Act and

---

[7] In the parties' June 28 letter to the Court, and again at the August 2 hearing, Defendants asserted that the CFTC's claim that disclosure of the identity of the anonymous source's attorney might tend to lead to the disclosure of the anonymous source is "belied" by the fact that the CFTC itself has not learned the anonymous source's identity, despite knowing the attorney's identity for years. *See* Jnt. Ltr. to Court (June 28, 2013) at 5; Exh. 7 at 17:14-18:6. Defendants' argument fails to recognize that the CFTC has never sought the identity of the anonymous source, while Defendants have expressly demanded that the CFTC reveal the source's identity, *see* Exh. 6 at 2, and have subpoenaed the source's attorney for information that would tend to lead to identification of the source himself. *See* Exh. 5.

permitted such persons to report potential violations anonymously through counsel.  *See* 7 U.S.C. § 23(d) (2012).  Subjecting attorneys to subpoenas each time they advise an anonymous informant would risk creation of a chilling effect – attorneys would be forced to warn their clients that, despite proceeding anonymously, they may be forced to endure the expense and effort of discovery propounded on the attorney, but plainly designed to flush out the informant.[8] The Court should reject the creation of such a loophole in the informant's privilege.

### 3.      The Informant's Privilege Has Not Been Waived

Although the informant's privilege is the government's to assert, the Supreme Court has held that the privilege is waived when the informant's identity is disclosed to those who would resent the informant's cooperation.  *Roviaro*, 353 U.S. at 60.  Defendants have argued that the CFTC's inadvertent disclosure in this case operates to waive the informant's privilege.  *See* Jnt. Ltr. to Court (June 28, 2013), at 5; Exh. 7 at 18:7-19:4.  But the analysis cannot end there.

Defendants' argument ignores the express language of the Stipulated Protective Order. Defendants agreed to be bound by the Stipulated Protective Order governing discovery in this case, and that order specifically states that inadvertent disclosure of information for which a claim of privilege exists does not, on its own, create a waiver of the privilege claimed.  *See* Stip. Prot. Ord. at 12; *see also Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96Civ.7590 (DAB) (JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997) (claw-back provision in stipulated protective order eliminates need for inquiry into inadvertence of disclosure).  Thus, under the plain language of the Stipulated Protective Order, the CFTC's claims of privilege over

---

[8] Defendants' subpoenas do not ask directly for the source's identity, but at the August 2, 2013 hearing before the Court, Defendants made clear that they may do so in the future.  *See* Exh. 7 at 22:10-23.

information related to the identity of the attorney and his law firm were not waived by the

CFTC's inadvertent production of such information on March 22 or April 25, 2013.[9]

> ### 4.   The Information Sought in the Subpoenas is Not Material to Defendants' Defense Because It Is Not Relevant to Any Claim or Defense in This Case

The informant's privilege is not absolute; if disclosure of an informant's identity "is

relevant and helpful to the defense of an accused, or is essential to a fair determination of a

cause, the privilege must give way." *Roviaro*, 353 U.S. at 60-61.  The Second Circuit has

interpreted *Roviaro* to require disclosure of an informant's identity when it is "material to the

defense."  *See DiBlasio v. Keane*, 932 F.2d 1038, 1041-42 (2d Cir. 1991) (citing *United States v.

Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988), *cert. denied*, 489 U.S. 1089 (1989)).  The Court's

determination of materiality depends on the circumstances of the case and considers such factors

as the offense charged and possible defenses, the possible significance of the informant's

testimony, and "other relevant factors."  *See Roviaro*, 353 U.S. at 62.

Defendants cannot establish the materiality required to overcome the protection afforded

by the informant's privilege, and their subpoenas would only serve to burden the attorney and the

attorney's law firm without any prospect of the discovery of admissible evidence.  The identity

of the anonymous source is wholly irrelevant in this action.  Neither the attorney nor his client

---

[9] Although the Stipulated Protective Order obviates the need to undertake a waiver analysis under Federal Rule of Evidence 502, even if the Court were to do so, there would still be no waiver in this case.  The production of the privileged document on March 25 was plainly inadvertent, as the CFTC had no reason to expect that information it collected during the National Crude Oil Investigation would include a copy of the CFTC's own communication with an attorney.  *See* Exh. 10.  In addition, prior to the April 25 production, the CFTC carefully redacted the images of documents it had created, only to learn, upon receipt of Defendants' subpoenas, that metadata produced with those document images had not been properly redacted. The small number of privileged documents in the CFTC's vast production also counsels against finding waiver.  *See, e.g., SEC v. Cassano*, 189 F.R.D. 83, 86 (S.D.N.Y. 1999) (producing a few privileged documents in a massive production is not inconsistent with due care in discovery). Finally, the CFTC moved promptly to rectify the error after learning of its inadvertent production.  *See* Exhs. 9, 11.

appears in the CFTC's Rule 26(a)(1) disclosures, the CFTC has stated categorically that it has no plans to call either person as a trial witness, and the CFTC did not receive – from the attorney or his client – any of the evidence it plans to put forward to prove its allegations.  *See R.C.O. Reforesting v. United States*, 42 Fed. Cl. 405, 410 (Fed. Cl. 1998) (granting protective order where government was not relying on informants); *United States v. Herrero*, 893 F.2d 1512, 1526-27 (7th Cir. 1990) ("[T]he fact that the informer was never called as a witness at trial means that the information provided the government was not relevant to the government's case nor would it have been helpful for impeachment purposes."), *abrogated on other grounds by United States v. Durrive*, 902 F.2d 1221 (7th Cir. 1990).  *See also United States v. Napier*, 436 F.3d 1133, 1133-36 (9th Cir. 2006); *Fairchild*, 2006 WL 2519481, at *1-7.

The CFTC's allegations against Defendants – developed by the CFTC through independent analysis after receiving tips from more than one anonymous source – will rise or fall primarily through entry into evidence of trading data, Defendants' testimony and communications, and expert analysis.  Thus, none of the information the CFTC received from its anonymous sources will be put forward at trial to prove the allegations in this action.  Nor have Defendants raised any defense that could be affected by an anonymous source's perception of Defendants' trading activity or information communicated by the source to the CFTC.  Indeed, if such information or communications did exist, Defendants would already have it:  the CFTC has produced the *contents* of its communications with its anonymous sources and their representatives.  Only identity information has been redacted.  *See* Exh. 4 (log describing redactions based on claims of privilege).  Aside from information to be used for purposes

14

Defendants have admitted are not relevant to this case,[10] any unique information the source's attorney might have (that is not itself protected by the attorney-client privilege or work product doctrine) would therefore have no bearing on the claims or defenses in this case.

### C.   Defendants Violated the Stipulated Protective Order

Defendants violated the Stipulated Protective Order when they failed to notify the CFTC of their receipt of facially privileged information.  The appropriate sanction for Defendants' violated is an order preventing enforcement, or requiring withdrawal, of Defendants' subpoenas to the source's attorney and the attorney's law firm.

The language of the Stipulated Protective Order is plain:  any time a party receives information that appears on its face to have inadvertently produced, that information must be returned immediately.  Stip. Prot. Ord. at 12.  The Stipulated Protective Order also makes clear that inadvertent production, without more, does not result in the waiver of any claim of privilege.  *Id.*  Challenges to claims of privilege are to be resolved in accordance with Rule 26(b)(5)(B).  *Id.*

The CFTC's April 25, 2013 redaction log put Defendants on notice that the CFTC claims as privileged information relating to the identity of the anonymous source, the anonymous source's attorney, and any other information that might tend to disclose the anonymous source's

---

[10] In the parties' June 28 letter to the Court and at the August 2 hearing, Defendants admitted that they are seeking discovery from the source's attorney to develop new claims against the CFTC and to assist their defense of the private class action that runs parallel to this case.  *See* Jnt. Ltr. to Court at 6; Exh. 7 at 16:2-17:13.  The Rules do not allow for such discovery.  *See* Fed. R. Civ. P. 26(b)(1) (2013) & 2000 advisory committee's note (parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings").

In addition, Defendants' exploration of potential affirmative claims against the CFTC rests on the mistaken assumption that the CFTC was prohibited from disclosing hypothetical information to a confidential source because Defendants sought confidentiality for their production to the CFTC under to the Freedom of Information Act.  The CFTC's Division of Enforcement is authorized to disclose such information for law enforcement purposes.  *See* 17 C.F.R. §11.3 (2012).  *See also AVCO Fin. Corp. v. CFTC*, 929 F. Supp. 714, 719 (S.D.N.Y. 1996) (7 U.S.C. § 12 and 17 C.F.R. § 11.3 "do not guarantee absolute confidentiality"); *CFTC v. Harker*, 615 F. Supp. 420, 424 (D.D.C. 1985) (same).

identity.  *See* Exh. 4.  Despite having such notice, Defendants failed to notify the CFTC when Defendants discovered the CFTC's inadvertently produced information.  Instead, Defendants used the inadvertently produced information to generate non-party subpoenas.

Defendants do not dispute that, once they uncovered a document from the CFTC's March 22, 2013 production,[11] they cross-referenced that document, which had not been redacted, with the redacted documents in the CFTC's April 25, 2013 production.  *See* Exh. 7 at 12:20-13:1. The fruit of this endeavor is apparent from Defendants' subpoenas, which request documents related to topics found only in the CFTC's April 25 production, such as voice-changing devices. *See* Exh. 5 at 8, 32.  Once Defendants connected the inadvertently produced information to the CFTC's redacted documents, Defendants should have notified the CFTC of the production of facially privileged information.  *See* Stip. Prot. Ord. at 12.  They did not do so.

The Court has broad discretion to fashion an appropriate remedy when a party has failed to comply with a discovery order.  *See, e.g.*, *Reilly v. Natwest Mkts. Grp. Inc.*, 181 F.3d 253, 267 (2d Cir. 1999) ("Whether exercising its inherent power, or acting pursuant to Rule 37, a district court has wide discretion in sanctioning a party for discovery abuses[.]") (citation omitted).  In this case, the Court should impose the same remedy the CFTC requests in its motion for a protective order – that Defendants be prevented from enforcing, or required to withdraw, their subpoenas to the attorney and the attorney's law firm.  Such an order would return the parties to their positions prior to the CFTC's inadvertent production of privileged information and Defendants' improper use of that information.

---

[11] As discussed in Part I above, the CFTC was the "Producing Party" under the Stipulated Protective Order both for documents created by the CFTC and for documents collected by the CFTC during the National Crude Oil Investigation.  *See* Stip. Prot. Ord. at 2.  The National Crude Oil Investigation documents were collected outside the scope of this litigation, were requested from the CFTC under Rules 26 and 34, and were produced by the CFTC.

### III.   CONCLUSION

The Court should enter a protective order prohibiting enforcement, or requiring withdrawal, of Defendants' subpoenas to a non-party attorney and the attorney's law firm.  The subpoenas implicate privileged information inadvertently produced by the CFTC during discovery because they seek information that tends to reveal the identity of the CFTC's confidential source.

In addition, the information requested in the subpoenas is not relevant to any claim or defense in this case, and the subpoenas could only serve to burden the attorney and law firm. Finally, Defendants' violation of the Stipulated Protective Order in this case justifies the remedy the CFTC seeks.

Dated:  August 12, 2013

U.S. COMMODITY FUTURES
TRADING COMMISSION


_____
Christine M. Ryall (*cryall@cftc.gov*)
Jonathan P. Robell (*jrobell@cftc.gov*)
Division of Enforcement
1155 21st Street NW
Washington, DC 20581
(202) 418-5000 telephone
(202) 418-5523 facsimile

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 12, 2013, I filed a copy of the foregoing Plaintiff's

Memorandum in Support of Motion for a Protective Order and for Enforcement of the Stipulated

Protective Order using the CM/ECF system, which will automatically send electronic mail

notification of such filing to all parties.

_____

Jonathan P. Robell