USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/14/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. COMMODITY FUTURES TRADING COMMISSION,

Plaintiff,

-against-

PARNON ENERGY INC., ARCADIA PETROLEUM LTD, ARCADIA ENERGY (SUISSE) SA, NICHOLAS J. WILDGOOSE AND JAMES T. DYER,

Defendants.

11 Civ. 3543 (WHP)

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, District Judge:

The United States Commodity Futures Trading Commission ("CFTC") moves to prevent enforcement of Defendants' subpoenas duces tecum issued to a non-party attorney and the attorney's law firm in the Northern District of Illinois and for the return of metadata pursuant to a protective order. For the following reasons, the CFTC's motion is granted in part and denied in part.

BACKGROUND

This lawsuit concerns alleged price manipulation of crude oil futures in 2007 and 2008 by Parnon Energy Inc., Arcadia Petroleum Ltd., Arcadia Energy (Suisse) SA, Nicholas J. Wildgoose, and James T. Dyer ("Defendants") in violation of the Commodities Exchange Act, 7 U.S.C. §§ 9, 13(a)(2), and 13(a)(b). The CFTC's application underscores the perils of carelessness during document production. As part of pretrial proceedings, the parties agreed to a

confidentiality order. (See Stip. Protective Order, dated June 25, 2012, ECF No. 59. ("Confidentiality Order").) That order provided for the return of inadvertently disclosed privileged material and guaranteed that "such inadvertent or mistaken disclosure . . . shall not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity." (Confidentiality Order at 12.)

In March 2013, the CFTC produced documents relating to its earlier investigation of the crude oil market. Interspersed among the more than 250,000 documents were emails between the CFTC and an attorney in Chicago. At the time, the significance of those emails was not obvious. But in a subsequent document production in April 2013, the CFTC invoked the informer's privilege and redacted information that "tend[ed] to reveal the identity of an attorney and a law firm representing certain anonymous sources" whom the CFTC had consulted. (Pl.'s Mem in Supp. at 3.)

When Defendants reviewed that April document production, they learned that the CFTC had consulted with a confidential informant via the informant's attorney. Defendants recognized various spreadsheets the CFTC sent the informant, purporting to present a hypothetical crude oil trading pattern to the informant, as identical to confidential spreadsheets they had provided to the CFTC. The CFTC's hypothetical trading pattern was hypothetical only in the sense that it omitted the names of Defendants and their counterparties. Thereafter, Defendants sought to discover how the CFTC's informant or informants might have used or disseminated their proprietary information.

By comparing unredacted emails from the March production with their redacted duplicates from the April production, Defendants identified the attorney who was acting as an intermediary between the CFTC and its informant. (See Decl. of Timothy J. Carey Supp. Defs.'

Opp'n Pl.'s Mot. Protective Order, dated Aug. 16, 2013, ECF No. 131 at Ex. C (sealed); Decl. of Jonathan P. Robell Supp. Pl.'s Mot. Protective Order and Enforcement Stip. Protective Order, dated Aug. 13, 2013, ECF No. 129 at Ex. 10 (sealed)). They also learned that the informant worked for one of their competitors. Because of another production error, Defendants were able to confirm the identity of the attorney by reviewing unredacted metadata associated with 21 redacted documents from the CFTC's April production.

Exploiting these lacunae, Defendants subpoenaed the informant's attorney and his law firm to obtain all communications between the attorney and the CFTC and all communications between the attorney and other persons "concerning any of the Defendants." (See, e.g., Subpoena dated June 10, 2013 ("Subpoena") (filed under seal).) The CFTC now seeks to prevent enforcement of those subpoenas and claw back discovery material that revealed the attorney's name.

## DISCUSSION

### I. Authority of the Court

A district court has an obligation to supervise the contours of discovery in actions pending before it. Chevron Corp. v. Donziger, No. 11 Civ. 0691 (LAK), 2012 WL 6634680, at *2 (S.D.N.Y. Dec. 19, 2012) (quoting Static Control Components, Inc. v. Darkprint Imaging, 201 F.R.D. 431, 434 (M.D.N.C. 2001)). "Consequently . . . the district court in which [an] action is pending may issue protective orders ruling that discovery not be had or that it be conducted on limited terms, as these are issues that extend beyond the details of a specific subpoena." Donziger, 2012 WL 6634680, at *2. Federal district courts have found it appropriate to issue such orders "where (1) the issues raised [by the protective order] are central to the case and extend beyond the specifics of the particular subpoena, and (2) the requested ruling is necessary

to insure that general discovery issues will receive uniform treatment, regardless of the district in which the discovery is pursued." Donziger, 2012 WL 6634680, at *2; see also Rajala v. McGuire Woods, LLP, No. 8 Civ. 2638 (DJW), 2010 WL 4683979, at *8 (D. Kan. Nov. 12, 2010).

Defendants seek information concerning the identity of a confidential informant. Whether such information is privileged implicates the broader course of discovery in this action. There is still more informant-related information that Defendants might seek to discover. Moreover, the scope of the informer's privilege requires overarching supervision by the trial judge because it must be effective across jurisdictional lines. The privilege cannot protect informers against reprisal if a party can end-run the process in another judicial district. Because the CFTC's application raises a privilege issue extending beyond Defendants' subpoena and demanding uniform treatment "regardless of the district in which . . . discovery is pursued," see Donziger, 2012 WL 6634680, at *2, this Court has authority under Rule 26(c) to issue the requested order.

II. The Informer's Privilege

The CFTC claims that the identities of its informant, the informant's attorney, and communications tending to reveal the informant's identity are covered by the informer's privilege. Defendants maintain that the informer's privilege applies only to the informant's identity and not to the attorney or communications between the two. Moreover, Defendants assert that even if the informer's privilege applies to the informant's attorney, the privilege claim fails because they have learned the attorney's identity. Finally, Defendants insist that they are entitled to the information sought via subpoena, notwithstanding the informer's privilege, because the information is relevant to (a) their defense to the manipulation charge, (b) their

statute of limitations defense in related civil actions, and (c) potential claims against the CFTC for disclosure of Defendants' confidential information. (See D. Opp'n at 11–16.)

A. Standard

The informer's privilege is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." Roviaro v. United States, 353 U.S. 53, 59 (1957). "By withholding the identity of the informer, the government profits in that the continued value of informants placed in strategic positions is protected, and other persons are encouraged to cooperate in the administration of justice." In re United States, 565 F.2d 19, 22 (2d Cir. 1977) (quoting United States v. Tucker, 380 F.2d 206, 213 (2d Cir. 1967)). "The doctrine of informer privilege is applied in civil as well as criminal cases . . . . Indeed, there is ample authority for the proposition that the strength of the privilege is greater in civil litigation than in criminal." In re United States, 565 F.2d at 22 (citations omitted).

The informer's privilege is cabined by three limitations. First, it protects only the identity of the informant—not the content of the informant's communications. Westinghouse Elec. Corp. v. Burlington, 351 F.2d 762, 768 (D.C. Cir. 1965). Second, the privilege has no application when the informer's identity is disclosed "to those who would have cause to resent the communication." Roviaro, 353 U.S. at 60. Third, it is a qualified privilege that must yield to fairness when the information sought "is relevant and helpful to the defense." Roviaro, 353 U.S. at 60–61; see also Westinghouse, 351 F.2d at 769 ("The Roviaro balance should be struck in each case, civil and criminal, in deciding whether disclosure is essential to a fair determination of a cause." (internal quotation marks and citation omitted)).

B. Scope of the Informer's Privilege

The scope of the informer's privilege is coextensive with its purpose. See Roviaro, 353 U.S. at 60. Although the privilege concerns only the informer's identity and not his communications, it is well settled that the privilege "extends to information that would tend to reveal the identity of the informant." United States v. Napier, 436 F.3d 1133, 1136 (9th Cir. 2006); see also United States v. Cartagena, 593 F.3d 104, 113 (1st Cir. 2010) ("[I]f disclosure of a communication's contents will also tend to reveal an informant's identity, the contents are also privileged."); Westinghouse Elec. Corp., 351 F.2d at 768; In re Apollo Grp., Inc. Sec. Litig., 251 F.R.D. 12, 34 (D.D.C. 2008); Herman v. Crescent Publ'g Grp, Inc., No. 00 Civ. 1655 (SAS) (FM), 2000 WL 1371311, at *5 (S.D.N.Y. Sept. 21, 2000).

Here, the informant's identity is privileged, and to the extent the attorney's identity or communications would tend to reveal the informant's identity, the informer's privilege bars discovery of that information.

C. Disclosure of Privileged Information

Even if the attorney's identity falls within the scope of the privilege, Roviaro teaches that a claim of privilege may nonetheless fail. "[O]nce the identity of the informer has been disclosed to those who would have cause to resent the communication, the privilege is no longer applicable." Roviaro, 353 U.S. at 60. There is no use in a court throwing a theoretical cloak over an informant when in practice the informant remains exposed to whatever retaliation might have been averted through anonymity. See, e.g., Henrik Mannerfrid, Inc. v. Teegarden, 23 F.R.D. 173, 176–77 (S.D.N.Y. 1959) (finding that the informer's privilege was lost once the informer disclosed his identity to the defendants).

However, the informant's identity has not been disclosed. Therefore, the fact that

Defendants have already discovered the identities of the informant's attorney and the attorney's law firm does not defeat the CFTC's claim of privilege.

The parties also executed a confidentiality order providing that inadvertent disclosure of privileged information does not result in waiver. (Mem. in Supp. at 12.)

> Any Discovery Material that contains privileged information . . . shall be immediately returned if the Discovery Material appears on its face to have been inadvertently produced or if there is notice of inadvertent production. The receiving party's treatment of such material shall be in accordance with Federal Rule of Civil Procedure 26(b)(5)(B). Such inadvertent or mistaken disclosure of such Discovery Material shall not by itself constitute a waiver by the producing party of any claims of privilege or work-product immunity.

(Confidentiality Order at 12.)

Defendants insist that the protective order does not apply to the disclosure because a third party, not the CFTC, initially produced the allegedly privileged documents to the CFTC, and the CFTC lacked authority to redact information from the third party's production. (D. Opp'n. at 5.) This Court need not reach this question, however, because even assuming the confidentiality order applied, the CFTC's utter failure to review tens of thousands of third-party documents for privilege constituted "completely reckless" production effectively waiving the privilege.

Inadvertent disclosure provisions in stipulated protective orders are generally construed to provide heightened protection to producing parties. See U.S. Fidelity & Guar. Co. v. Braspetro Oil Servs. Co., Nos. 97 Civ. 6124 (JGK)(THK), 98 Civ. 3099 (JGK)(THK), 2000 WL 744369, at *4 (S.D.N.Y. June 8, 2000); Prescient Partners, L.P. v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590 (DAB)(JCF), 1997 WL 736726, at *4 (S.D.N.Y. Nov. 26, 1997). As Magistrate Judge Francis explained in Prescient Partners, "[t]he parties draft[] th[ese] provision[s] to provide for the out-of-court resolution of inadvertent production issues and to

avoid litigating these issues. If the provision[s] applied only to documents deemed inadvertently produced under governing caselaw, then the parties would have to brief that law for the court to determine even whether the provision applied to a particular situation. This would contravene the provision's purpose of protecting the parties from having to litigate inadvertent production issues." Prescient Partners, 1997 WL 736726, at *4. Thus, where the parties execute a stipulated protective order with an inadvertent waiver provision, "waiver is appropriate only if production of the privileged material was 'completely reckless.'" Braspetro Oil Servs. Co., 2000 WL 744369, at *4.

"For a production to be 'completely reckless,' the producing party must have shown no regard for preserving the confidentiality of the privileged documents." Prescient Partners, 1997 WL 736726, at *4. It is not enough that the inadvertent production involved a large number of documents. See HSH Nordbank AG N.Y. Branch v. Swerdlow, 259 F.R.D. 64, 75 (S.D.N.Y. 2009) (upholding privilege where inadvertently disclosed documents "represent[ed] less than one-hundredth of one percent of those reviewed"). Given the scale of document production in contemporary litigation, errors—even those involving multiple documents—are inevitable. See, e.g., SEC v. Cassano, 189 F.R.D. 83, 86 (S.D.N.Y. 1999); Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 443 (S.D.N.Y. 1995). Where such errors occur despite careful document review procedures, courts have upheld claims of privilege even without the stricter standard for inadvertent waiver provisions in stipulated protective orders. See, e.g., Vegetable Research & Dev. Ctr. v. Inst. of Int'l Educ., No. 94 Civ. 6551 (RWS), 1995 WL 491491, at *7 n.6 (S.D.N.Y. Aug. 17, 1995) (finding twenty "a relatively small number of privileged documents . . . in comparison to the total number of documents produced"); Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y.

1985) (finding no waiver where party had produced twenty-two privileged documents in a total production of over 16,000 documents).

Here, however, CFTC's document production was reckless. Although the CFTC marked the third-party documents "highly confidential," (Robell Decl. at Ex. 2,) the CFTC does not appear to have conducted any privilege review of the third-party documents it produced to Defendants. (See Tr. of Oral Arg., dated Aug. 29, 2013 ("Aug. 29 Tr.") at 8.) This was no mere slip-up or technical error. The CFTC handed over hundreds of thousands of documents without first scanning them for privileged information. To call the CFTC's production merely "inadvertent" would risk turning the "completely reckless document production" into a kind of centaur: easy to imagine from its constituent parts but impossible to find in practice. Assuming the CFTC could have redacted the documents, its failure to do so showed a total disregard for the confidentiality of any of the documents. Therefore, the confidentiality order's inadvertent waiver provision does not apply to the March production, and the CFTC's disclosure of the attorney's identity and the attorney's law firm destroys any claim of privilege in that information.

D. Roviaro Balancing

While any privilege in the attorney's identity was lost when Defendants discovered the attorney's name, the communications sought by the subpoenas are another matter. They remain privileged to the extent that they tend to reveal the informant's identity.[1] But the

---

[1] Any requested documents that do not tend to reveal the informant's identity are not subject to the informer's privilege, and Defendants are entitled to them. The Court may conduct in camera proceedings to test the validity of the Government's claims of privilege in specific communications. See Kerr v. U.S. Dist. Court, 426 U.S. 394, 405–06 (1976) ("This Court has long held the view that in camera review is a highly appropriate and useful means of dealing with claims of governmental privilege.").

informer's privilege is not absolute. "[W]here the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Roviaro, 353 U.S. at 60–61. Following Roviaro, courts are required to balance the defendant's need for the privileged information against the government's need for secrecy. 353 U.S. at 61 ("The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense."). The party seeking disclosure bears the burden of proof on this point. See In re United States, 565 F.2d at 22–23.

From a defendant's perspective, the key issue is the potential weight of the informant's evidence. The Second Circuit has interpreted Roviaro's "relevant and helpful" language "to require disclosure when [the privileged information] is 'material to the defense.'" DiBlasio v. Keane, 932 F.2d 1038, 1041–42 (2d Cir. 1991). At times the Circuit has gone further and tasked the defendant with showing that disclosure is "essential to the defense." See, e.g., United States v. Flaherty, 295 F.3d 182, 202 (2d Cir. 2002); United States v. Russotti, 746 F.2d 945, 949 (2d Cir. 1984); United States v. Lilla, 699 F.2d 99, 105 (2d Cir. 1983) (abrogating the informer's privilege "requires some demonstration that in the absence of such disclosure the defendant will be denied a fair trial"). However it is characterized, the standard is met "where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." Russotti, 746 F.2d at 949–50. In Roviaro, for example, the Supreme Court required disclosure of the informer's identity "where the Government's informer was the sole participant, other than the accused, in the transaction charged." 353 U.S. at 64. By contrast, a party seeking disclosure cannot carry its burden "by mere speculation that identification might possibly be of some assistance. Disclosure should not

be directed simply to permit a fishing expedition, or to gratify the moving party's curiosity or vengeance." In re United States, 565 F.2d at 22–23. The Second Circuit has upheld claims of privilege where the informant was neither a direct witness to criminal conduct nor a source of key evidence at trial. See, e.g., Morales v. Strack, 116 F. App'x 293, 294 (2d Cir. 2004) (preserving informant's anonymity where informant had given information to police in support of a search warrant but there was no evidence that informant was present at the crime, and police did not call the informant at trial); Russotti, 746 F.2d at 950 (finding no need for disclosure where neither informant was a key witness and disclosure could at most go to another witness's credibility).

The Government has an interest in preserving an informant's anonymity. First, the Government may fear that disclosure would compromise or even endanger a valuable source of information. The need to protect an individual informant is particularly acute where the Government promised the informant that his identity would be kept secret. See, e.g., Wahad v. FBI, 131 F.R.D. 60, 62 (S.D.N.Y. 1990) (finding less need to maintain secrecy when the informant had volunteered information to the FBI before receiving any promise of confidentiality); New York v. Cedar Park Concrete Corp., 130 F.R.D. 16, 23 (S.D.N.Y. 1990) (emphasizing the importance of government actually promising confidentiality to the informant). Second, even when an individual informant has no reason to fear retaliation, the Government maintains an interest in protecting an informant's anonymity to reassure other, potential informants that their identities will not be disclosed. See Black v. Sheraton Corp. of Am., 47 F.R.D. 263, 272 (D.D.C. 1969) ("Plaintiff's argument that there is no danger of retaliation in an individual case does not obviate the necessity for the privilege since it is the disclosure itself rather than the conditions which prompted it that inhibit citizen cooperation.") (citation omitted);

Westinghouse, 351 F.2d at 768 ("[T]he privilege exists for the benefit of the general public, not for the benefit of the particular informer involved.").

Here, Defendants have failed to show that the need for disclosure outweighs the Government's need for secrecy. They offer little reason to believe their defense will suffer without disclosure of the informant. Like the informant in Morales, the CFTC's informant was not present at the charged conduct and will not furnish evidence at trial. (See Tr. of Oral Arg., dated Aug. 2, 2013 ("Aug. 2 Tr.") at 10.) Although the informant's perception of market activity during the manipulation period might be relevant to the manipulation charge, Defendants have not shown that the informant's perceptions are essential to a fair adjudication of that claim.

Defendants' alternative theories of materiality fare no better. The possibility that the informant could have information relevant to a related civil case does not lend much weight for disclosure in this action. And the claim that "the informer's attorney may be aware of exculpatory information exchanged during the informers' communications with the CFTC" amounts to little more than a request for a fishing expedition. In sum, Defendants show little need for the information sought in the subpoenas.

The Government's interest in preserving its informant's anonymity in this case is strong. The fact that the informant communicated only through an attorney suggests that he expected to remain anonymous. Although the informant's employer competes with Defendants and would have an independent incentive to report Defendants' manipulative activity to the Government, the informant himself may be vulnerable to retaliation from his employer or future employers within the industry if it becomes known that he has cooperated with the Government. (Cf. Mem. in Supp. at 9–10 ("The physical crude oil trading community in the United States is relatively small . . . .").) Moreover, the Government retains its general interest in encouraging

cooperation by promising anonymity. United States v. Fields, 113 F.3d 313, 324 (2d Cir. 1997). Because the CFTC has a strong interest in preserving the informant's anonymity and Defendants have not shown that disclosure is essential to a fair adjudication, the interests of fairness do not require abrogation of the informer's privilege.

III. Sanctions for Violations of the Confidentiality Order

The CFTC claims Defendants violated the confidentiality order by failing to notify the CFTC that it had received non-party documents disclosing privileged information and unredacted metadata confirming the informer's attorney's identity. The CFTC requests that this Court sanction Defendants by preventing enforcement or requiring withdrawal of the subpoenas. (Mem. in Supp. at 15.) Because the CFTC's wholesale production of privileged material from third parties was reckless, see supra Part IIC, it does not qualify as an inadvertent disclosure subject to the clawback provision of the protective order. Therefore, Defendants did not violate the confidentiality order by failing to return the non-party documents. Nevertheless, the Defendants' subpoenas are limited by this Court's determination that the CFTC's invocation of the informer's privilege was proper.

The unredacted metadata is another matter. The unredacted metadata was associated with otherwise carefully redacted documents. (Mem. in Supp. at 4 n.4.). Its production was obviously inadvertent. Moreover, the CFTC notified Defendants of the inadvertent production in a letter dated June 19, 2013. (Mem. in Supp. at Ex. 9.) Defendants' failure to return the unredacted metadata violated the Confidentiality Order. Under the terms of the Confidentiality Order, the metadata should be returned.

## CONCLUSION

For the foregoing reasons, the CFTC's motion is granted in part and denied in part. The reach of Defendants' subpoenas is limited to documents and information with no tendency to reveal the informant's identity. However, the identities of the informant's attorney and the attorney's law firm are not privileged because they were disclosed. Defendants are directed to return forthwith the metadata referenced in the CFTC's letter dated June 19, 2013. The Clerk of Court is directed to terminate the motion pending at ECF No. 126.

Dated: May 14, 2014
New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.

*All Counsel of Record*